UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
www.flmb.uscourts.gov

| | | |
|---|---|---|
| In re: | ) | Case No. 3:17-bk-00698-PMG |
| | ) | |
| IRYNA HRACHOVA, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| IRYNA HRACHOVA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 3:17-ap-169-PMG |
| | ) | |
| DEUTSCHE BANK TRUST COMPANY | ) | |
| AMERICAS, AS TRUSTEE FOR | ) | |
| RESIDENTIAL ACCREDIT LOANS, INC. | ) | |
| MORTGAGE ASSET-BACKED PASS- | ) | |
| THROUGH CERTIFICATES, SERIES | ) | |
| 2006-QS16; and WELLS FARGO BANK, | ) | |
| N.A., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**DEBTOR'S RESPONSE AND OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS**

The Plaintiff, IRYNA HRACHOVA (hereinafter "Plaintiff" or "Hrachova"), by and through undersigned counsel, hereby files this Response and Opposition to Defendants' Motion to Dismiss (Doc. No. 7), and in support thereof further states as follows:

**I.      Introduction**

The Plaintiff filed the instant adversary proceeding seeking various forms of equitable and legal relief based on the Defendants' lack of standing to file a proof of claim in the underlying Chapter 13 case, and the damages that have been caused therefrom. Rather than filing an Answer,

1

the Defendants filed a motion to dismiss, alleging that there is a "standing within a standing" argument. In short, the Defendants argue that the Plaintiff/Debtor does not have standing to contest their standing to file a proof of claim. The argument is circular in nature, and pretends to show that, even if they illegally obtained the original loan documents, the Plaintiff/Debtor cannot contest the manner in which they came into possession of the loan documents, and simply must pay them, right or wrong. For the reasons stated herein, the Plaintiff opposes the Defendants' Motion to Dismiss and would request this Honorable Court to enter an order denying the motion.

## II.    Standard of Review for Motion to Dismiss for Lack of Subject Matter Jurisdiction

The issue of "standing is jurisdictional in nature, and thus whether plaintiffs have standing is always a threshold inquiry." *Feltman v. Prudential Bache Sec.*, 122 B.R. 466, 470 (S.D. Fla. 1990), citing, *E.F. Hutton & Co. v. Hadley*, 901 F.2d 979, 983 (11th Cir. 1990); and *Federal Deposit Ins. Corp. v. Morley*, 867 F.2d 1381, 1387 (11th Cir. 1989).

In any motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure[1], "[s]ubject matter jurisdiction can be challenged . . . either facially or factually." *Sinaltrainal v. Coca-Cola Co.*, 256 F. Supp. 2d 1345, 1350 (S.D. Fla. 2003), citing, *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990), and *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1260-61 (11th Cir. 1997). Considering the Defendants' acceptance of the allegations of the Complaint as true, for the purposes of their motion to dismiss, this would be a facial challenge. "A facial challenge presumes the allegations in the complaint to be true and test whether they are sufficient. The question thus presented in this type motion is whether the allegations, if proven, would establish subject matter jurisdiction," via constitutional standing. *Lawrence v. Dunbar*, 919 F. 2d at 1529. In so deciding on Defendants' motion to dismiss, "the Court must accept as true all of

---

[1] While the Defendants' Motion to Dismiss does not set forth any rule of procedure on which its motion is based, the "lack of standing" challenge is assumed to question the Court's subject matter jurisdiction.

the allegations in the complaint and disregard the litigant's likelihood of success on the merits." *E.F. Hutton & Co. v. Hadley*, 901 F.2d at 984.

In order to satisfy the standing requirements under Article III, Section 2 of the United States Constitution, "the plaintiff must show an 'injury in fact' that is 'fairly traceable' to the defendant's conduct and 'that is likely to be redressed by a favorable judicial decision." *Bank of America Corp. v. City of Miami*, 197 L. Ed. 2d 678, 686 (2017), citing, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); and *Lujan v. Defenders of Wildlife*, 112 S. Ct. 2130 (1992).

The Plaintiff's complaint satisfies all of the constitutional standing requirements, and thus, the Motion to Dismiss should be denied.

### III.    Argument

#### A.    The Plaintiff Can Challenge the Bank's Standing to File a Proof of Claim

The filing of a proof of claim by a bank or mortgage company in a bankruptcy case under Title 11 of the United States Code, is equivalent in nature to the filing of a foreclosure action in Florida state courts.  Both legal actions are efforts to collect on mortgage loan documents.  "A crucial element in any mortgage foreclosure proceeding is that the party seeking foreclosure must demonstrate that it has standing to foreclose." *McLean v. JPMorgan Chase Bank*, 79 So. 3d 170 (Fla. 4th DCA 2012); citing, *Lizio v. McCullom*, 36 So. 3d 927, 929 (Fla. 4th DCA 2010); and *Verizzo v. Bank of New York*, 28 So. 3d 976, 978 (Fla. 2d DCA 2010).  In this case, the Defendants' argument is that the Plaintiff does not have standing to challenge the standing of the bank, which is a convoluted and logically circular attempt to avoid a trial on the merits of this case.

If all of the allegations in Plaintiff's Complaint are taken as true, the Plaintiff has certainly set forth a factual basis for challenging the Defendants' ability to enforce the loan documents.

Rather than rephrase the allegations in the Complaint, the following is an excerpt of the pertinent provisions:

> 5.     *On or about September 6, 2006, Plaintiff borrowed a sum of the money in the amount of $147,350.00, in a mortgage loan transaction wherein Wachovia Mortgage Corporation ("Wachovia" or "Lender"), acted in the role "Lender" pursuant to the mortgage recorded on September 8, 2006, at Official Records Book 04558, Pages 0789-0804 of the Public Records of Marion County, Florida ("Mortgage"). The Note that was originally secured by the Mortgage and dated September 6, 2006, is referred to herein as the "Note". The debt evidenced by the Note when originally made is the "Loan." The purported lien claim represented by this Mortgage is herein called the "Primary Lien."*

> 6.     *The purchase of Wachovia by Wells Fargo was completed on December 31, 2008. Wells Fargo acquired Wachovia after a government-forced sale to avoid a failure of Wachovia.*

> 7.     *Servicing of the Debtor's loan allegedly transferred to Wells Fargo Bank, N.A. sometime between January 2009 and March 2009.*

> 8.     *It is alleged by Deutsche Bank that the Debtor ceased making payments on April 1, 2009 and Debtor thus defaulted on the terms of the Note and Mortgage on May 1, 2009.*

> 9.     *On June 9, 2010, Deutsche Bank filed a mortgage foreclosure action in the Circuit Court, Fifth Judicial Circuit, Marion County, Florida, Case No. 42-2010-CA-002696 (the "Foreclosure Case").*

> 10.     *In the Foreclosure Case, Deutsche Bank alleged that they were entitled to enforce the Note and Mortgage pursuant to Fla. Stat. § 673.3011.*

> 11.     *In the Foreclosure Case, Deutsche Bank never produced or introduced as evidence, supporting its contention that the Note was properly negotiated to Deutsche Bank or that Deutsche Bank actually acquired physical possession of the Note through the negotiation and transfer process sufficient to acquire the rights of enforcement.*

> 12.     *On August 13, 2010, Mortgage Electronic Registration Systems, Incorporated ("MERS") drafted, executed and notarized in York County, South Carolina, an Assignment of the Mortgage (together with the Note and indebtedness) from MERS as Nominee for Wachovia Mortgage Corporation to Deutsche Bank Trust Company Americas as Trustee for RALI Series 2006-QS16. MERS alleged had the authority to assign, transfer, grant and set-over the Note and Mortgage to Deutsche Bank in a nominee capacity for Wachovia Mortgage Corporation even*

*though Wachovia Mortgage Corporation had been sold to Wells Fargo Bank, N.A. ("Wells Fargo") nearly twenty (20) months earlier.*

13.   *The Assignment of Mortgage was executed and notarized over two months after the filing of the Foreclosure Case.*

14.   *According to the Pooling and Servicing Agreement for RALI Series 2006-QS16 dated November 1, 2006 (hereinafter "PSA") and the Prospectus Supplement, Form 424(B)(5) dated November 27, 2006 for RALI Series 2006-QS16 (hereinafter "Prospectus Supplement"), the parties duly appointed and involved in the administration of the trust were as follows:*

| | | |
|---|---|---|
| a. | *Originating Lender:* | *Wachovia Mortgage Corporation* |
| b. | *Seller & Sponsor:* | *Residential Funding Company, LLC* |
| c. | *Depositor & Company:* | *Residential Accredit Loans, Inc.* |
| d. | *Issuing Entity:* | *RALI Series 2006-QS16 Trust* |
| e. | *Trustee:* | *Deutsche Bank Trust Company Am.* |
| f. | *Custodian:* | *Wells Fargo Bank, N.A.* |
| g. | *Master Servicer:* | *Residential Funding Company, LLC* |
| h. | *Servicer:* | *Wells Fargo Bank, N.A.* |

15.   *According to Section 10.01(b) of the PSA, the Startup Day for the RALI Series 2006-QS16 Trust (hereinafter "Trust") was elected to be the same date as the Closing Date, which was November 29, 2006.*

16.   *The PSA clearly sets forth the exact chain of conveyance for all Mortgage loans conveyed to the Trust and is just as clear for the deadline on any and all transfers and conveyances of Mortgage loans to the Trust.*

17.   *Pursuant to Section 860G of the Internal Revenue Code, all of a Real Estate Mortgage Investment Conduit ("REMIC") loans must be acquired on the startup day of the REMIC or within three months thereafter.  Any contribution of an asset (other than cash) that is contributed to the REMIC after the Startup Day (or within the allowable 90 day window) is deemed an unqualified or prohibited contribution and can cause the entire REMIC Trust to lose its tax-free status which would be catastrophic to the Trust, as well as its individual beneficiaries, shareholders or Certificate holders) because the Trust cash flow would be subjected to double-taxation.*

18.   *Pursuant to 26 U.S.C. § 860F(a), at a minimum, the prohibited transaction is subject to a one-hundred percent (100%) tax.  Therefore, all parties serving as agents for the Trust must strictly adhere to the guidelines and conveyance clauses specifically delineated in Article II of the PSA lest the Trust lose its qualified REMIC tax status which would result in double taxation on all trust income, i.e. cash flow from the mortgage loans.*

19.     Section 2.01 of the PSA, specifically and absolutely dictates that all Mortgage Loans selected for inclusion into this specific Trust must be conveyed to the Trustee without recourse by the Depositor through a true purchase and sale conveyance.

20.     For the RALI Series 2006-QS16 Trust, the Depositor must purchase the Mortgage loans from the Sponsor/Seller, as is customary and standard in the securitization process, which means in the instant case, Residential Accredit Loans, Inc. would have purchase the subject Mortgage loan from Residential Funding Company and then Residential Accredit Loans, Inc. would have conveyed all rights, title and interest in the subject Mortgage loan to Deutsche Bank for the benefit of the Certificateholders of the Trust.

21.     The purchase and sale transactions of the Mortgage loans by and between the Seller and the Depositor is memorialized by the Assignment and Assumption Agreement.   This document clearly articulates that Residential Funding Company, LLC sold the Mortgage loans to the Depositor, Residential Accredit Loans, Inc., before the Closing Date of November 29, 2006, for any and all loans selected for inclusion in this specific Trust.

22.     In order for the subject Note to have been negotiated properly to the Depositor, a special indorsement from Residential Funding Company to the Depositor, Residential Accredit Loans, Inc., is required under UCC Article 3-201(b).

23.     The Assignment of Mortgage from MERS directly to the Trust violates the required chain of custody, as MERS, acting as nominee for Wachovia Mortgage Corporation, should have assigned the mortgage to Residential Funding Company.

24.     Wells Fargo Bank, N.A. ("Wells Fargo") filed Claim No. 3-1 in the Bankruptcy Case[2], holding itself out as the Servicer of the Loan on behalf of Deutsche Bank, whom it claims is the owner of the Loan.

It is clear from the allegations in the Complaint that the Defendants did not acquire the loan documents through lawful means, and therefore, is not the appropriate party to enforcing the subject loan documents.  The Plaintiff, as owner of the real property sought to be foreclosed,

---

[2] The Debtor, Iryna Hrachova, filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on March 1, 2017 in the United States Bankruptcy Court, Middle District of Florida, Jacksonville Division, Case No. 3:17-bk-00698-PMG (the "Bankruptcy Case").

certainly has the legal right to challenge the standing of the entity that seeks to enforce the documents. *McLean v. JPMorgan Chase Bank*, 79 So. 3d 170 (Fla. 4th DCA 2012).

**B.      The Plaintiff Has Suffered Injury In Fact**

The Plaintiff in this case has suffered "injury in fact," thus, giving her standing to challenge the Defendants' ability to enforce the loan documents.  "Article III standing requires a concrete injury . . ." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016).  Intangible injuries may be concrete for standing purposes.  *Spokeo, Inc. v. Robins*, 136 S. Ct. at 1549 ("Although tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete.").  See also *Church v. Accretive Health, Inc.*, 654 F. App'x 990, 995 (11th Cir. 2016) (holding the plaintiff's failure to receive disclosures to which she was entitled under the FDCPA constituted a concrete injury).

The Courts in this circuit have held that a foreclosure action constitutes an "injury in fact." *Davidson v. Mortgage Electronic Registration Systems*, 2012 U.S. Dist. LEXIS 186503 (N.D. Ga. May 7, 2012).  This Court can take judicial notice of the fact that a mortgage foreclosure action was filed against the Plaintiff/Debtor in Marion County, Florida.  However, the Plaintiff has more than just a foreclosure action to demonstrate injury in fact.  The Plaintiff has incurred attorney's fees and costs defending the State Court foreclosure case against entities that are not entitled to foreclose on her home.  See *Transweb, LLC v. 3M Innovative Props. Co.*, 812 F. 3d 1295 (Fed. Cir. 2016) (holding that incurring attorney's fees in underlying litigation can be injury in fact for constitutional standing purposes).

The gravamen of Defendants' argument that Plaintiff has not suffered "injury in fact" is based upon a fallacy.  They claim that if the Plaintiff pays them in full, that no one else will be

able to collect on the same debt.  The argument is self-serving and illusory, in that, potential litigation is, just that, an unknown quantity.

## IV.    Conclusion

Based upon the facts and law cited in this Response, the Plaintiff respectfully requests this Honorable Court enter an Order Denying Defendants' Motion to Dismiss (Doc. No. 7), and granting any such further relief that this Court deems just and proper under the circumstances.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via CM/ECF and Electronic Mail on Neisi L. Garcia Ramirez, Esq., Brock & Scott PLLC, 1501 NW 49th Street, Suite 200, Fort Lauderdale, Florida 33309 (FloridaBKLegal@brockandscott.com), 23rd day of November, 2017.

_ /s/ Aldo G. Bartolone, Jr. _____
ALDO G. BARTOLONE, JR.
Florida Bar No. 173134
BARTOLONE LAW, PLLC
4767 New Broad Street
Orlando, Florida 32814
Telephone: (407) 294-4440
Facsimile: (407) 287-5544
E-mail: aldo@bartolonelaw.com
Attorney for Plaintiff/Debtor